UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.: 1:24-cr-00084-TNM |
| | ) | |
| v. | ) | The Honorable Trevor N. McFadden |
| | ) | |
| **CHRISTOPHER RICHARDSON,** | ) | |
| AKA, "HENRY BASS", | ) | |
| | ) | |
| **Defendant.** | ) | |

### GOVERNMENT'S SENTENCING MEMORANDUM

Within a two-year span, Defendant Christopher Richardson committed two separate federal offenses. First, while still on supervised release for a prior federal conviction, he created a fictitious super PAC and filed Federal Election Commission reports claiming bogus fundraising and spending numbers. Second, Defendant used the alias "Henry Bass," a falsely inflated income, and another person's social security number to open and use a credit card to make approximately 200 purchases worth several thousand dollars. Both offenses bear striking similarities to Defendant's previous criminal misconduct, which resulted in a federal bank fraud conviction and multiple revocations of supervised release. The United States therefore believes a sentence within the United States Sentencing Guidelines range is appropriate and, for the reasons discussed herein, recommends a sentence of 18 months in prison, to be followed by three years of supervised release, and a special assessment of $200.

I.  **Background**

   A.  **The Offense Conduct**

In March 2020, while on supervised release for a previous federal conviction, Defendant registered Americans for Progressive Action USA ("AFPA") as an expenditure-only political action committee ("super PAC") with the Federal Election Commission ("FEC"). From day one, AFPA was a sham. In its Statement of Organization, Defendant listed fictitious persons as the super PAC's designated agent and treasurer. Then, one month later, Defendant filed AFPA's first Quarterly Report of Receipts and Disbursements and falsely represented that AFPA had raised a startling $4.8 million from multiple individuals in just its first month of existence. In reality, the donors were fictitious and AFPA had not raised a cent. This was followed by Defendant filing a 24/48 Hour Report of Independent Expenditures with the FEC which falsely reported that AFPA paid approximately $1.5 million dollars for advertisement and media production purchases opposing several political candidates, including three candidates for the United States Senate.

AFPA's purported prolific fundraising and spending attracted the media's attention, and, soon thereafter, its scrutiny. In May 2020, the electronic newspaper Politico published a story exposing that the "phantom super PAC" had not actually made the media purchases that it claimed. Two weeks later, Defendant filed an FEC Form 3X Report of Receipts and Disbursements claiming that AFPA was refunding the $4.8 million raised, specifically referencing the Politico reporter who exposed the false FEC reporting. This led to an FBI investigation which uncovered Defendant to be the man beyond the fictitious FEC filings.

In addition to creating the fake super PAC, the FBI investigation revealed that Defendant also engaged in credit card fraud. In August 2021, Defendant applied for an American Express

credit card using the alias "Henry Bass," which also happened to be the name he used on one FEC report as a fictitious donor to AFPA. To obtain the credit card, he also falsely claimed an income of $125,000 and used a social security number belonging to Individual A, without Individual A's knowledge. Defendant then used the credit card 200 times to rack up charges totaling approximately $7,800.[1]

### B. Defendant's Previous Criminal Conduct

This was not the first time that Defendant was federally convicted for conduct involving false statements and fraud. According to the Presentence Report, Defendant, at the age of 20, engaged in an elaborate scheme to defraud his maternal aunt and a federally insured bank. (Dkt. 11, pp. 13-14.) After learning that his aunt had obtained money through a retirement plan and the sale of her residence, Defendant defrauded her into entrusting the money with him and allowing him to open joint credit accounts by falsely convincing her that they would be real estate development partners. (*Id.*) He then deceived the bank over his credit worthiness by presenting a fraudulent tax income return and Merrill Lynch account statement that falsely inflated his income. (*Id.*, p. 14.) Through these lies, Defendant got loans, loan extensions, and loan referrals that allowed him to obtain and purchase, among other things, a $155,000 line of credit, a Porsche, and two Mercedes. (*Id.*). This resulted in a federal bank fraud conviction in the Western District of Texas. (*Id.*, p. 11.) *See also United States v. Aragon*, 10-cr-326-FB (W.D. TX).

Following his 51-month prison sentence, his supervised release was revoked three times. (Dkt. 11, p. 12.) According to the Presentence Report, his violations of supervised release included opening multiple lines of credit without his probation officer's prior approval, accruing a line of

---

[1] The Government notes that Defendant did pay off the balance. (Dkt. 12, ¶ 25.)

credit worth over $77,000 which had an outstanding balance of over $9,000, and opening another line of credit using an alias. (*Id.*, pp. 16-17.) The Presentence Report also reflects that one supervising probation officer reported being contacted by a credit union that claimed Defendant fraudulently obtained a line of credit and then threatened legal action against the credit union while purporting to be an attorney from a fictitious law firm. (*Id.*, p. 16.)

### C. Procedural History

On February 15, 2024, the Government filed a two-count Information, charging Defendant with one count of making a false entry in a record, in a violation of 18 U.S.C. § 1519, and one count of use of an unauthorized access device, in violation of 18 U.S.C. § 1029(a)(2). On February 29, 2024, the Court held an arraignment and plea hearing in which Defendant entered a guilty plea to both counts of the Information.

## II. Sentencing Guidelines Calculation

The Government agrees with the Guidelines calculations set forth in the Presentence Report, which are as follows:

**Count 1: Making a False Entry in a Record**

| | |
|---|---|
| Base Offense Level (§ 2J1.2) | 14 |
| **Adjusted Offense Level** | **14** |

**Count 2: Unauthorized Use of an Access Device**

| | |
|---|---|
| Base Offense Level (§ 2B1.1(a)(2)) | 6 |
| Use of ID to obtain other means of ID (2B1.1(b)(11)(C)(i)) | 6 |
| **Adjusted Offense Level** | **12** |

**Multiple Count Adjustment**[2]

| | |
|---|---|
| Count 1 | 1.0 units |
| Count 2 | 1.0 units |
| **Total** | **2.0 units** |

**Total Offense Level and Guidelines Sentencing Range**

| | |
|---|---|
| Combined Adjusted Offense Level:[3] | 16 |
| Acceptance of Responsibility (USSG §§ 3E1.1(a) and (b)). | -3 |
| Total Offense Level | 13 |
| Criminal History Category | III (5 points) |
| **Guidelines Sentencing Range** | **18-24 months** |

### III.   Sentencing Recommendation

The Government recommends a term of imprisonment of 18 months, to be followed by three years of supervised release, and a special assessment of $200.  This within-Guidelines recommendation reflects the expertise of the Sentencing Commission, serves the vital goal of uniformity in sentencing, and is supported by the Presentence Report.  It is also "sufficient, but not greater than necessary" to satisfy the § 3553(a) factors, as it reflects the seriousness of the offense, promotes respect for the law, provides just punishment, and serves as adequate deterrence.

### A.   Application of the Guidelines in Imposing a Sentence under 18 U.S.C. § 3553(b)

The Supreme Court has advised that "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall v. United States*, 552 U.S. 38, 50 n.6 (2007). And while the Guidelines serve as one factor among several that courts must consider in determining an appropriate sentence, it remains that "the Commission

---

[2] Pursuant to Chapter 3, Part D of the Sentencing Guidelines, the offenses do not group. Moreover, because Count Two is 1 to 4 levels less serious than Count One, Count Two should be counted as a separate unit. *See* U.S.S.G. § 3D1.4(a).

[3] Because there are a total of 2 units, 2 levels should be added to the highest offense level – here, Count One.  *See* U.S.S.G. § 3D1.4(a).

fills an important institutional role: It has the capacity courts lack to base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise." *Kimbrough v. United States*, 552 U.S. 85, 90, 108-09 (2007) (internal quotation marks omitted). Thus, "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Id.* (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)).

Here, there is no reason for Defendant to receive a sentence below the applicable Guidelines range. As the Presentence Report notes, in the last five fiscal years, similarly situated defendants have received an average sentence of 15 months in prison. (Dkt. 11, ¶ 147). A sentence just three months longer in length than the average will not result in any significant sentencing disparity. *See* 18 U.S.C. § 3553(a)(6). Moreover, the § 3553(a) factors provide no basis to impose a sentence below the Guidelines range in this case. *See, e.g., id.*, ¶ 147 (noting that Defendant's history of criminal conduct may warrant an upward variance). His sentencing range is primarily driven by his criminal history, which reflects recidivism of similar, fraudulent conduct. A Guidelines sentence would account for his recidivism and that he committed two criminal offenses in the short two-year time period of March 2020 to March 2022.

### B.   18 U.S.C. § 3553(a) Factors

Section 3553(a) of Title l8 of the United States Code governs sentencing in federal criminal cases and provides that the Court shall consider, in relevant part: "the offense . . . the history and characteristics of the defendant. . . respect for the law. . . just punishment . . . adequate deterrence . . . the sentencing range, . . . and the need to avoid unwarranted sentencing disparities," all in imposing a sentence that is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). Here,

the history and characteristics of the defendant and the need for specific deterrence is an especially weighty factor.  Additionally, the nature and seriousness of the offenses, which were two separate instances of carefully and deliberately calculated fraudulent conduct, and the need to promote respect for the law and afford adequate deterrence, support the Government's sentencing recommendation.

      **A.**      **The history and characteristics of the defendant and the need to afford adequate specific deterrence and protect the public from further crimes of the defendant (18 U.S.C. § 3553(a)(1), (2)(C), (2)(D)).**

As the Presentence Report makes clear, Defendant's conduct was not an aberration.  In fact, he had not even completed his period of supervised release from his prior bank fraud conviction when he engaged in the offense conduct that brings him before this Court.  (Dkt. 11, p. 13.) Defendant's repeated violations of his conditions of pretrial release reflect little, if any, rehabilitation since his first federal conviction or respect for the law.

Moreover, the similarities between his convictions and conduct while on supervised release, including the use of aliases, the falsifying of records, and the bogus inflation of money and income – in financial records then and in FEC reports and credit card applications now – is reason for a sentence within the Guidelines range.   It's not just that he continues to engage in misconduct; it's that he continues to engage in misconduct of the same nature.

Finally, Defendant's penchant for elaborate criminal conduct warrants a within-Guidelines sentence to protect the public from future crimes.  It is not every day that the Court will have before it a man who, at 20 years of age, successfully defrauded a bank, and, years later, defrauded the public by creating a fake SuperPAC.  Indeed, it is clear that Defendant is intelligent enough to succeed in endeavors of a higher calling but chooses instead to continue to engage in criminal

conduct. A within-Guidelines sentence here will hopefully, finally, provide the deterrence necessary for Defendant to course-correct.

**B.     The nature and circumstances of the offense and the need for the sentence to reflect the seriousness of the offense and provide just punishment (18 U.S.C. § 3553(a)(1), (2)(A)).**

The nature and circumstances of the offense and the need for the sentence to reflect its seriousness also warrant a within-Guidelines sentence of 18 months imprisonment. In particular, both offenses required Defendant to make multiple false statements. When he completed the false Form 1 registering AFPA, he signed and certified that it was "true, correct, and complete," and the form advised that submission of false information may subject him to penalties under federal law. He then went on to file three more false FEC reports. When he engaged in the credit card fraud, he falsified his name, income, and social security number. The unauthorized use of the social security number to obtain credit, in particular, showed callous disregard for an innocent individual.

The Government acknowledges that neither offense caused significant harm nor involved significant aggravating factors, as reflected by Defendant's relatively low adjusted offense level. But his own history and characteristics as described above, coupled with the multiple falsifications he engaged in for these two offenses, warrant a within-Guidelines sentence.

**C.     The need for the sentence to promote respect for the law and afford adequate general deterrence (18 U.S.C. § 3553(a)(2)(A), (B)).**

An eighteen-month term of imprisonment is also necessary to promote respect the rule of law generally, and in particular respect for the FEC reporting laws. Federal campaign finance laws serve the important purpose of protecting transparency in political fundraising and spending. Voters are entitled to know how much money candidates for federal office and political action committees are raising and spending. When persons file false reports, they deprive the public of

this transparency and threaten public confidence in voting and elections. By violating the carefully crafted campaign finance laws, the defendant showed no regard for the integrity of the democratic process. Moreover, because citizens use the reporting of political fundraising and spending to decide how to donate their own money, fake super PACs or "scam PACs" such as AFPA facilitate fraud. AFPA could easily have attracted actual donations from politically attuned citizens impressed by its fundraising prowess. To be sure, the Government has no evidence of defendant stealing money through AFPA. But the creation of fake super PACs still must be deterred, just as Defendant must be specifically deterred from engaging in future criminal conduct.

So too must credit card fraud be generally deterred. Defendant's acts were egregious because he used a stolen social security number. Because identity theft often wreaks havoc on its victims, it is important for such conduct to be deterred in all instances.

## V.      Conclusion

The Governments respectfully submits that a low-end Guidelines sentence appropriately addresses the defendant's criminal conduct here and his recidivist behavior generally. Based on the applicable Guidelines and a consideration of the sentencing factors provided in 18 U.S.C. §

3553(a), the Government recommends that the Defendant be sentenced to eighteen months confinement, three years of supervised release, and a $200 special assessment.

| | |
|---|---|
| MATTHEW M. GRAVES<br>United States Attorney | COREY AMUNDSON<br>Chief, Public Integrity Section |
| <u>//S// Elizabeth Aloi</u><br>Elizabeth Aloi<br>Assistant United States Attorney<br>D.C. Bar Number #1015864<br>601 D Street, N.W.<br>Washington, D.C. 20539<br>Office: (202) 252-7212<br>Elizabeth.Aloi@usdoj.gov | <u>//S// Ryan R. Crosswell</u><br>Ryan R. Crosswell<br>Trial Attorney<br>N.C. Bar # 36700<br>1301 New York Ave. NW<br>Washington, D.C. 20005<br>Office: 202-616-5699<br>Ryan.R.Crosswell@usdoj.gov |